# Richmond

## E. F. DOUGLAS, TRADING AND DOING BUSINESS AS KREMLIN PACKING CO. V. THE UNITED COMPANY, A MARYLAND CORPORATION.

November 20, 1944.

Record No. 2820.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*R. O. Norris, Jr., F. V. Watkins* and *George Walker*, for the plaintiff in error.

*C. O'Conor Goolrick* and *F. F. Chandler*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

On the 10th day of February, 1941, the plaintiff, the United Company of Maryland, sold to the defendant, E. F. Douglas, trading and doing business as Kremlin Packing Company, these machines:

"One rebuilt Tuc Cutter, Model EFI—626—
old type heads—with adaptor—without mo-
tor .................................$  285.00
"Two rebuilt Tuc Huskers, single phase mo-
tors at $385.00. Models EMIS 711 & 712..  770.00
"One extra head.........................   25.00
                                         ————————
                                         $1,080.00"

On the 2nd day of May, 1941, the plaintiffs, the United Company, a Maryland corporation, and Fay & Scott of Dexter, Maine, a Maine corporation, sold to said defendant

"One rebuilt Tuc Cutter, without motor, with
adaptor, old style heads, to the value of...$  450.00"

Cash payments made at the dates of sales left due these respective sums: $427.93 and $225.00. They were to be paid within six months from said dates.

Title was retained; payments were not made, and motions in detinue, each set down for the 28th day of June, 1943, were filed on the 11th day of that month and by consent were heard together. It was said that redelivery had not been made and that payment had not been made, and judgment for said sums was accordingly asked.

To these motions special pleas were filed, the substance of which is that the vendors were guilty of fraud in their inception and of gross misrepresentation.

The trial was first had without the presence of a stenographer to transcribe its proceedings; later one was secured. Some of the testimony, taken under earlier conditions, was later retaken. Some of it was taken in the presence of the jury and some of it was taken before the judge in chambers. Probably all of it should have been taken before the jury, but if this was error, it was harmless. A jury's verdict in favor of the defendant would have been without evidence to support it.

"In *Gillespie* v. *Somers*, 177 Va. 231, 13 S. E. (2d) 330, we said: 'A judgment that is plainly wrong or without evidence to support it should not be allowed to stand. (Code, sec. 6363.)' " *Ramey* v. *Ramey*, 181 Va. 377, 25 S. E. (2d) 264.

Upon him who charges fraud rests the heavy burden of proof, and it must be established by evidence clear, cogent and convincing. *McClintock* v. *Royall*, 173 Va. 408, 4 S. E. (2d) 369.

The trial court was of opinion that it had not been so established but that conditions of sale, printed on the contracts of sale themselves, governed, and this though all that was said on behalf of the defendant be taken at its face value. The attitude of the court on these issues joined is best shown by its instruction, while that of the defendant is made plain by its exceptions; and so, although it be out of the usual order, that instruction is quoted:

"The court: Gentlemen of the jury, it is agreed between counsel for both parties that instead of taking your time and the court's time to prepare written instructions in this case that the court shall instruct you orally.

"These actions are what we call in law 'actions in detinue,' which means that the plaintiff claims that the defendant is in possession of his property and detains it from him unlawfully and he asks the court to require the defendant to surrender that property for the reason that the contracts originally

entered into between these parties provide that the title to said machines remains in the seller until the same are fully paid for.

"In view of the fact that both plaintiff and defendant admit that the contract No. 2226 and the contract No. 2628 which were introduced in evidence were the contracts originally executed between the parties, and in view of the further fact that those contracts provide, among other things, as follows:

" 'This equipment, by the terms of the contract to be governed by the same terms and conditions as if it were new and unused equipment, is purchased subject to the following guarantee, which is the only warranty, either express or implied, made under this contract or otherwise. Such equipment is warranted by builder and seller to be of good workmanship and material, and to perform its work in a commercially satisfactory manner, when set up, operated, and cared for, in normal use and service, according to the written instructions furnished by seller. If, upon starting such new or unused equipment in service operation by buyer, same shall fail to conform to above warranty, buyer agrees to notify seller by wire of such failure immediately that same becomes apparent, and to give seller opportunity to send representative to demonstrate the proper working of such machines, and if such representative then shall be unable to make same conform to above warranty, and buyer has fully cooperated with and assisted said representative, then the equipment so failing may be returned to builder's plant, or to such point as seller may designate, properly crated, and upon arrival there in good order and condition, reasonable wear and tear excepted, with carrying charges prepaid, any money paid hereunder will be refunded. Buyer agrees to be responsible for any damages to said machinery having taken place after original shipment of same to buyer, and prior to its arrival back at builder's factory shipping point, or at point designated by seller, and which damage was due to any cause whatever, other than reasonable wear and tear caused by operation of same in normal use and service, and when

cared for according to seller's written instructions. In consideration of this guarantee, buyer waives any and all other rights and remedies and agrees to accept said refund in full settlement of all claims.

" 'Credit for parts of new or previously unused equipment proving to be defective in workmanship or material on or before October first of first season's operation of the equipment shall be allowed, and new parts shall be sent to replace same by builder, f. o. b. builder's factory shipping point, provided seller is notified immediately that such defects are discovered, and that, upon seller's request, such parts are returned to seller for its inspection, freight or parcel post prepaid, and provided said machinery has been set up, operated and cared for in normal use and service, and according to said written instructions furnished. It is agreed that no other claims for damages or labor will be made by or allowed to buyer hereunder.'

"Therefore the court instructs the jury in this case that according to these contracts the only remedy which the buyer had in the event, for any reason, the machines proved unsatisfactory, that is, commercially unsatisfactory, was that it could, within the proper time, and which time was as follows: That upon starting such machines in service operation by the buyer, if the same should fail to conform to the warranty given by the seller, the buyer agreed to notify seller by wire of such failure immediately and to give the seller the opportunity to then send a representative of the seller to the buyer to demonstrate the proper working of such machines and that if such representative should then be unable to make said machines then conform to the said warranty, that then the said machines so offending might then be returned to the seller and the buyer would then have the right to an immediate return of his purchase money previously paid and a cancellation of any remaining part of the purchase money then remaining unpaid, and since all of the evidence in this case, both for the plaintiff and the defendant, shows that this was not done in the time aforesaid, therefore the court instructs the jury that if you believe from the

evidence in this case what has been heretofore stated in this instruction given you by the court, you will find a verdict for the plaintiff."

To that instruction this objection was made by counsel for the defendant:

"Counsel for the defendant objects to the foregoing instruction to the jury on the ground that it totally disregards the evidence that has been offered, establishing, in the opinion of counsel for the defendant the fact that the defendant was induced by fraudulent representations to enter into the original written contracts above referred to and that the terms of such written contracts are therefore not binding upon the defendant. Counsel for defendant does not offer any instruction to be passed upon by the court for the reason that the court has refused to permit counsel for the defendant to offer evidence to prove to the jury the damages that were suffered by the defendant by reason of his having been fraudulently induced to enter into said original contract, with the result that there is no evidence before the jury as to the damages suffered by the defendant.

"Counsel for the defendant objects to said instruction on the further ground that even if said written contracts were binding on the defendant, a proper construction of same would not subject him to those parts of the contract stated in the court's instruction."

These cases drift down to this: The trial court was of opinion that such recourse as the defendant had had been provided for in his contract of purchase and that no fraud had been shown.

The Maryland Company is a small corporation and is not, strictly speaking, a manufacturer; it does rebuild machines and, in doing so, makes all necessary replacements. Recourse for conditions which develop are set out in the contract of sale. Its contention is that these machines were completely rebuilt and when delivered were in all respects as represented. They are used in canning corn and are some-

what complicated. When sold, the purchaser was given elaborate directions as to their care and management.

Ralph Cover, president of the Maryland corporation, testified that the machines in question were completely rebuilt from top to bottom; worn-out parts were replaced, and when the machines were shipped to defendant, they were in good working condition.

Lyman Keever was superintendent of the plaintiff's Maryland shop and said:

"These machines were completely rebuilt under my supervision. They were in as good condition as new machines when shipped out. I personally checked them. The push rods were not too short. The machines were taken completely down, all the old grease and dirt was washed out and necessary new parts were put in. They were then put together and we tried them out."

Sam Hoel's testimony is to this effect:

" * * * I am a machinist and I am foreman at the shop of the United Company at Westminster, Maryland.

"Q. Did you rebuild the cutters and huskers sold to the Kremlin Packing Company?

"A. The cutters and huskers were rebuilt under my personal supervision in the company's plant at Westminster.

"A. Please state what you did to them?

"A. We took them completely down, washed out all the old grease and dirt, took out useless old parts and put in all necessary new parts. The push rods on the cutters are all right and one was not too short when they left our plant. All new parts that were needed were put on.

"Q. Did you visit the defendant's plant?

"A. I went to the defendant's plant in the early part of the season of 1941. The machines had been at work about five days. I cleaned the machines and adjusted them and followed the written instructions. I saw them operate and there was no trouble with the push rods. The machines were working all right."

These machines were not paid for in 1942 and are not yet paid for. On July 23rd of that year, Keever went down to

Virginia to collect the balance due to his company and to make such adjustments as seemed to be necessary. He found that there was some trouble with the cutters and returned with the necessary repairs on July 29th and then left this machinery in good condition. His efforts to collect were fruitless. Mr. E. F. Douglas with an oath told him that he would pay it when he got good and ready.

Douglas said that he was sole proprietor of the Kremlin Packing Company; as such, his case is that made out by him. A stream cannot rise higher than its source. He said that there was some trouble with the cutter which continued throughout the season of 1941, but that he had it fixed before the 1942 season. He also said that he had trouble with one of the huskers and again he was asked: "What trouble did you have with the huskers?" And answered: "The huskers—no trouble with the huskers particularly but Mr. Osborne came to my plant, taken the working parts off of both cutters—not just one but he taken them off of both—carried them back with him—where he carried them to, I do not know, and sometime in June he returned and told me to have my mechanic put them on the machine."

He further said that a Mr. Osborne had told him that these machines had not been rebuilt, and when asked why he had neither paid for these machines nor returned them said:

"That is the first time the question has been asked me, sir, and I will tell you why. On account I considered your representative—he told me, he said, 'You ain't got to return them; we will rebuild them and put them here like they should be.' Believe it or not, sir, that is the reason they were not returned."

Again he said:

"Q. And today, after two years' operation, these machines which you testify were never rebuilt are performing commercially satisfactory and satisfactory to yourself; is that correct?

"A. Yes, sir.

"Q. And outside of the repairing done to those brackets, that is all that was done on the machine in the matter of replacing parts?

"A. Replacing some chains and stuff I put there.

"Q. You have testified that you bought a Harley-Davidson chain?

"A. Two of them, I think it was.

"Q. But outside of the Harley-Davidson bicycle chains which you bought—

"A. Motorcycle chains.

"Q. And the repairing of these four brackets, those machines today are the same as when you received them; is that right?

"A. As far as I know of, sir.

"Q. And after two years of operation, with the accumulation of dirt and the duties of the machines, they are now at last performing satisfactorily?

"A. With the dirt, as you say, yes, sir,—as you claim, yes, sir."

Without examining this defendant's claim at greater length, we think he has no case.

That these machines were rebuilt is established by the record. Mr. Osborne's agency is challenged. He is not shown upon the company's books as entitled to social security after 1939. It is said that his business is selling fish-bait, although he was allowed to sell individual machines by special arrangement from time to time. The extent of his authority was submitted to the jury.

It was to be expected that these machines would develop defects from time to time; chains would break; bearings would wear; cutters' teeth would break, etc. The purchaser could buy from the vendor necessary repairs or return his machines—all of which, with meticulous care was provided for in the contract of purchase.

Defendant's claim of fraud drifts down to this: He undertakes to prove by Osborne that these machines were not rebuilt. Proof is overwhelmingly against him, and Mr. Douglas' own evidence shows that there was no fraud in-

volved in these contracts of sale. The machines were certainly used for two years; and, so far as this record goes, are still used. Not until after the plaintiff had begun to insist upon payment did this defense appear. It is without merit. There is no reversible error in the record, and the judgment of the trial court must be affirmed.

*Affirmed.*