## Richmond

WILLIAM M. OLDS AND HELEN B. OLDS, TRADING AS "OO" BEAUTY PRODUCTS COMPANY v. MINNIE WOOD.

March 7, 1955.

Record No. 4313.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Walker Florance and Delmar L. Brown,* for the plaintiffs in error.

*Christian, Barton, Parker & Boyd* and *R. Harvey Chappell, Jr.,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

Minnie Wood filed a motion for judgment against William M. Olds and Helen B. Olds, trading as "OO" Beauty Products Company, seeking to recover damages for personal injuries received by her as a result of a fire which allegedly occurred while the plaintiff was using "OO" oil shampoo, a product manufactured by and purchased from the defendants.

The motion alleged that it was the duty of the defendants "to use due and proper care in manufacture and sale of said shampoo fluid, to give proper and complete instructions as to its use, including the proper labelling thereof, so that same might safely be used for the purposes for which it was intended"; that the defendants disregarded said duties and as a proximate result plaintiff suffered personal injuries and resultant damages to the extent of $50,000. The defendants filed their answer denying the allegations.

The case was tried before a jury. At the conclusion of the plaintiff's evidence and again upon the completion of all the evidence the defendants moved to strike on the ground of insufficiency, which motions were overruled, and proper exceptions were noted. The jury returned a verdict for the plaintiff in the sum of $15,000. A motion to set the verdict aside as being contrary to the law and the evidence was also overruled and the court, over the objection of defendants, entered judgment thereon. We granted the defendants a writ of error.

Defendants rely upon eight assignments of error. In our view of the case it is only necessary for us to consider one question; i.e., was there any proof of actionable negligence on the part of the defendants?

The plaintiff's husband, Charles Wood, testified that he purchased a pint bottle of "OO" oil shampoo from the defendants, who had manufactured it. The bottle contained these directions: "A shampoo to be used without soap or water. Heat until warm, pour through the hair a little at a

time. Massage well, dry well with towel until the oil is out. Apply 'OO' working oil to the scalp and 'OO' pressing oil only to the scalp and press."

He further testified that on the same afternoon the shampoo was purchased he proceeded to heat the substance in a pan until "lukewarm" and then began to shampoo his wife's hair by pouring the liquid on the hair and massaging her scalp. After applying the shampoo he dried plaintiff's hair with a towel and combed the hair back from her face. At this point plaintiff placed a cigarette in her mouth and struck a match "holding it at arms length in front of her". Upon lighting the match there was "a flash of flame", which engulfed plaintiff in and about her hair and clothing.

The foregoing account of how the accident happened as testified to by the husband was corroborated by his wife, the plaintiff.

Plaintiff states in her brief that "the cigarette was never lit and when later picked up off the floor it was found not to have been touched by fire. The shampoo was being administered in the kitchen of plaintiff's home, which was heated only by a gas cook stove and this stove was cut off immediately after the heating of the 'OO' oil shampoo. * * * The plaintiff's husband, children and mother attempted to extinguish the flames which enveloped the plaintiff but not before the plaintiff had been seriously injured."

A portion of the liquid remaining in the bottle was analyzed by plaintiff's witness, William R. Maynard, Jr., a chemist employed by the State of Virginia, and by defendant's witness, B. J. Peters, a chemist with Frohling and Robertson, Inc., of Richmond. All of the liquid placed in the pan was used in the shampooing operation and none was available for analysis.

Maynard testified that the flash point of the shampoo taken from the bottle was 171 degrees Fahrenheit, and Peters testified that his analysis revealed it to be 172 degrees. The chemists agreed that the one degree variation was inconsequential.

The chemists testified that "flash point was defined as the minimum temperature where a volatile liquid will give off vapors and with an external source of ignition give a momentary flash."

It was established on interrogatories that "the ingredients of 'OO' oil shampoo was insecti-sol with about a teaspoon of oil of wintergreen added to five gallons. * * *" The oil of wintergreen was for the purpose of giving a pleasant odor to the preparation.

There was no proof that the shampoo used in the operation ever reached 171 or 172 degrees Fahrenheit. The husband stated that the liquid was never more than "lukewarm". Webster's New International Dictionary, Second Edition, defines lukewarm as "moderately warm; neither cold nor hot; tepid; * * *". It was admitted that had the temperature of the shampoo reached 171 or 172 degrees it would have been too hot to apply with comfort and there was no testimony as to any discomfort to plaintiff from the operation.

There was no conflict in the evidence of the two chemists. However, B. J. Peters, the chemist introduced on behalf of the defendants, was asked whether or not it would have been possible under the conditions described for the liquid analyzed to have ignited and caused the fire, to which he replied "* * * It would not have been possible for it to happen." No such question was asked by plaintiff of her witness, Maynard, and no attempt was made by her to refute the positive answer made by Peters that the fire could not have happened in the manner and under the conditions described.

Plaintiff failed to prove the allegations that the defendants failed "to use due and proper care in the manufacture and sale of said shampoo fluid", and she failed to establish the allegation that defendants failed to "give proper and complete instructions as to its use". These were the acts of negligence alleged, and there was no proof in the record establishing them.

Plaintiff argues in her brief that "a manufacturer or seller of an article which is inherently and imminently dangerous to human life or health, or which, although not dangerous in itself, becomes so when applied to its intended use in the usual and customary manner, is liable to any person, who, without fault on his part, sustains an injury which is the natural and proximate results of negligence in the manufacture or sale of the article." Citing 65 C. J. S., Negligence, § 100, p. 618; 46 Am. Jur., Sales, §§ 814, 815, pp. 938, 939.

We recognize the correctness of the quoted statement but the evidence of the plaintiff's witness, Maynard, negatives the fact that the substance analyzed by him and claimed to have been used by plaintiff was inherently and imminently dangerous to human life or health when applied to its intended use in the usual and customary manner. The husband testified that the shampoo was applied in the usual and customary manner, *i.e.*, by heating the substance to a "lukewarm" temperature and applying it to plaintiff's hair. Maynard testified unequivocally that the shampoo would not give off vapors and would not "flash" from an external source of ignition until it had reached a temperature of 171 degrees Fahrenheit. The quoted statement therefore does not apply.

We are reminded that when we have a jury's verdict, approved by the trial judge, we should view the case practically as upon a demurrer to the evidence (§ 8-491, Code of Va., 1950); that in such a situation plaintiff's evidence and all fair inferences which may be drawn therefrom must be accepted as true, and evidence in conflict therewith is waived. *McDowell* v. *Dye*, 193 Va. 390, 395, 69 S. E. (2d) 459, 463. Applying the rule in the instant case, there is no evidence of negligence upon which to base the verdict of the jury, and a judgment entered on such a verdict should not be allowed to stand. *Gillespie* v. *Somers*, 177 Va. 231, 13 S. E. (2d) 330; *Douglas* v. *The United Co.*, 183 Va. 263, 31 S. E. (2d) 889. Here we have allegations of negligence with no proof establishing them. The happening of the accident was no proof of negligence, and where affirmative

and preponderating proof of negligence is not established there can be no recovery. 13 M. J., Negligence, § 58, p. 583; *Southern Railway Co.* v. *Moore,* 108 Va. 388, 61 S. E. 747; *Clinchfield Coal Co.* v. *Wheeler,* 108 Va. 448, 62 S. E. 269; *Richter* v. *Seawell,* 183 Va. 379, 32 S. E. (2d) 62.

For the reasons stated the judgment of the trial court is reversed and final judgment is here entered for the defendants.

*Reversed and final judgment.*