## Richmond

GREATER RICHMOND CIVIC RECREATION, INCORPORATED, ET AL. v.
A. H. EWING'S SONS, INCORPORATED.

January 26, 1959.

Record No. 4866.

Present, Spratley, Buchanan, Miller, Whittle and I'Anson, JJ.

The opinion states the case.

*Edward A. Marks, Jr.* (*Sands, Marks & Sydnor*, on brief), for the plaintiffs in error.

*Walter E. Rogers* (*Williams, Mullen, Pollard & Rogers*, on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

This action was instituted by Greater Richmond Civic Recreation, Incorporated, and the City of Richmond, Virginia, hereinafter referred to as the plaintiffs, against A. H. Ewing's Sons, Incorporated, hereinafter referred to as the defendant, to recover the sum of $46,460.10, as damages arising out of a breach of contract by the defendant to furnish and install certain floodlighting poles and equipment at Parker Field in the City of Richmond, Virginia, which field was owned by the City of Richmond, Virginia, and leased by Greater Richmond Civic Recreation, Inc. To the plaintiffs' motion for judgment, bill of particulars, and amended and supplemental bill of particulars, a demurrer was interposed by the defendant, which was sustained by the trial court. The motion for judgment was then amended and another demurrer was interposed, which was also sustained, and the case dismissed.

From the allegations in the motion for judgment, the bill of particulars, the amended and supplemental bill of particulars, and the amended motion for judgment it appears that under the terms of a certain verbal agreement made and entered into between the plaintiffs and the defendant between March 18 and May 3, 1954, as evidenced by a written memorandum thereof signed by the defendant, dated May 3, 1954, the defendant undertook to furnish and install at Parker Field in the City of Richmond, Va., certain floodlighting equipment and poles to support the same, all of which said work, the manner of its performance, and the conditions pertaining to the same, was fully set out in certain plans and specifications incorporated in the written memorandum by reference.

The defendant, in and about the performance of the work, was required to furnish and install 23 steel poles to support the floodlighting system. The poles were described in the plans and specifications as follows:

Sec. "23. *Steel Poles*: (a) Steel poles shall be located as indicated on the plans. They shall be 100 feet in height and shall be equipped with platform assemblies, cross-arms, etc., all as indicated on the plans. *The poles shall be design #544-Y-53 for mounting 32 floodlights per pole as manufactured by Union Metal Manufacturing Company, Canton, Ohio, or approved equal. The poles shall be guaranteed to withstand a wind pressure of 100 mph when the pole is completely equipped with all lights, wires, etc., in its intended location.* The steel poles shall be mounted on the concrete foundations as indicated." (Italics supplied.)

The defendant elected to furnish and install 23 steel poles manufactured by Union Metal Manufacturing Company, but failed to furnish poles guaranteed to withstand a wind pressure of 100 miles per hour when fully equipped with all lights, wires, etc., in their intended location, and failed to furnish and install poles which were in fact capable of withstanding such wind pressure when so equipped and erected. The plans and specifications also provided:

Sec. "31. *Testing and Guarantee*: * * * * *

"(b) * * * [The contractor] shall guarantee the material, equipment and workmanship furnished by him shall be entirely free from defects, and that he will repair or replace at his own expense as may be directed by the Architect, any material, equipment or workmanship in which defects may develop within one year from date of final payment for the work."

On or about October 15, 1954, at the time "Hurricane Hazel" struck in the area, and within one year from the date of final payment for the work, many of the poles so furnished, installed and guaranteed by the defendant proved to be structurally unsound, developed defects, and failed under wind pressure of considerably less force than 100 miles per hour, and blew down, bent and broke, destroying themselves, the floodlighting equipment and wiring supported thereon, and inflicted consequential damage to other structures of the plaintiffs at Parker Field, all to the damage of plaintiffs in the sum sued for.

The effect of the demurrers to the motion and the amended motion for judgment was to admit as true all allegations of material facts, which were sufficiently pleaded. *Washington* v. *Garrett*, 189 Va. 57, 61, 52 S. E. 2d 83, 85; Burks Pleading and Practice, 4 ed. p. 353.

The sole question for our determination is whether the allegations of the amended motion for judgment stated a cause of action when tested by the demurrer.

■ Generally, a construction contractor who has followed plans and specifications furnished by the owner which have proved defective or insufficient will not be responsible to the owner for loss or damage which results solely from the defective or insufficient plans and specifications in the absence of negligence on the contractor's part, *or any express guarantee or warranty by him as to their being sufficent or free from defects. Southgate* v. *Sanford & Brooks Co.*, 147 Va. 554, 561, 562, 563, 137 S. E. 485, 487, 488; *Adams* v. *Tri-City Amusement Co.*, 124 Va. 473, 476, 98 S. E. 647,

648; *State* v. *Commercial Casualty Ins. Co.*, 125 Neb. 43, 248 N. W. 807, 88 A. L. R. 790; 9 Am. Jur. § 28, p. 20. See also Anno. 88 A. L. R. 797.

■ The language of the guarantee clause in § 23 of the plans and specifications is susceptible of several constructions. It is ambiguous and not clear as to its intended meaning. The meaning attributed to it by the court below was that the language was merely descriptive in the sense that poles represented by the manufacturer as being capable of withstanding the stated wind pressure were desired. Other possible meanings from the language used are: That the contractor was guaranteeing the poles to withstand the wind pressure of 100 miles per hour; that he would furnish the owner with the manufacturer's guarantee, and that he was guaranteeing the complete job, when construed along with § 31, against defects arising within one year of its completion.

Ordinarily it is the duty of the court to construe a written contract when it is clear and unambiguous on its face, but when a contract is ambiguous it is necessary to resort to parol evidence to ascertain the exact intention of the parties. This is especially true when no formal written contract has been entered into by the parties. In such cases the meaning of the contract upon the evidence should be submitted to the jury if reasonable men might draw different conclusions therefrom. *City of South Norfolk* v. *Wolcott*, 140 Va. 611, 622, 125 S. E. 687, 690; *Turner* v. *Hall*, 128 Va. 247, 253, 255, 104 S. E. 861, 863, 864.

In *Geoghegan* v. *Arbuckle Bros.*, 139 Va. 92, 100, 101, 123 S. E. 387, 389, 36 A. L. R. 399, this court said (139 Va. 100, 101, 123 S. E. 389):

"But where the language of the contract is not clear and unambiguous, and resort to extrinsic evidence is necessary, if the situation is such that fairminded men might draw different conclusions therefrom, then the constructon of the contract is for the jury under proper instructions from the court, even though the evidence be not conflicting."

This case refers to numerous authorities in this state and other jurisdictions in support of the principle stated.

The judgment appealed from is reversed and the case remanded to be further proceeded with on the plaintiffs' amended motion for judgment.

*Reversed and remanded.*