**Adelbert LITTLEHALE and Erwin Zelanko, Appellants,**

v.

**E. I. du PONT de NEMOURS & CO., Appellee.**

**No. 456, Docket 30720.**

United States Court of Appeals Second Circuit.

Argued May 10, 1967.

Decided May 29, 1967.

Herman Schmertz, New York City (Gair & Gair, New York City, on the brief), for appellants.

Harold R. Medina, Jr., New York City (V. Thomas Fryman, Jr., Cravath, Swaine & Moore, New York City, on the brief), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

PER CURIAM:

Adelbert Littlehale and Erwin Zelanko appeal from a judgment by Judge Tenney of the District Court for the Southern District of New York, which dismissed their claims against du Pont upon the latter's motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

Appellants' action, which sought money damages, was based upon the claimed negligence of du Pont in failing to adequately warn them of the dangers inherent in the use of certain detonators (blasting caps) that it had manufactured. The essential facts are not disputed, are fully set forth in Judge Tenney's thorough and well-reasoned opinion, 268 F.Supp. 791 (S.D.N.Y.1966), and lend themselves to simple statement. The caps in question were manufactured in August 1944, specifically for use by Army Ordnance. They were not produced for resale and differed from the detonators which du Pont manufactured for general commercial purposes and sale and resale. These caps were intended to detonate "Composition C," a military explosive manufactured by the government. The Army, in its contract with du Pont, incorporated detailed specifications as to the way to manufacture the caps and their component parts, and no claim is made that these particulars were not in fact met. Since the caps were to be used by Ordnance, which thoroughly trained its members to be expert in the use of explosives, the government did not require any warning except that which was called for by regulations of the Interstate Commerce Commission (and with which du Pont complied). Indeed, Ordnance apparently considered any warnings by the manufacturer to be superfluous and it issued its own warnings of the caps' inherent dangers to the Ordnance personnel undergoing training.

The actual use of the caps, which caused the tragic injuries here, occurred 13 years after their manufacture. On July 17, 1957, the U. S. S. Somersworth was at sea, engaged in sound propagation tests being conducted for the Navy's Undersea Laboratories. Littlehale, a civilian employee of the Navy (electronics engineer class G. S. 7), had previously assembled without incident 134 explosive devices to be used in connection with this series of tests.[1] The devices consisted

1. He nevertheless stated in his affidavit that he "was never trained in the use of explosives and never trained others in the use of explosives. * * * The Navy never designated me as an explosive expert and I received no training in the use or nature of explosives * * *."

basically of 3 du Pont blasting caps (the only items involved that were manufactured by du Pont), so-called Ensign Bickford fuses, a TNT grenade, priming adapter and a steel tube.[2] The 135th device, however, after being assembled, exploded prematurely injuring Littlehale and Zelanko, an apprentice fireman who was an innocent bystander.

While appellants concede that the Ordnance specifications neither required nor contemplated that du Pont would provide any warning other than that which was made mandatory by the Interstate Commerce Commission Regulations, they claimed in the District Court and on appeal that du Pont was negligent in failing to adequately warn them of the dangers inherent in the use of these blasting caps.

We agree with Judge Tenney who concluded that there was no duty to provide a more detailed warning than had been given because the undisputed facts [3] revealed that, as a matter of law, du Pont could not have foreseen that its detonators, manufactured specifically for use by highly trained Ordnance personnel to detonate "Composition C," would in fact be utilized 13 years later by a civilian employee of the Navy to detonate a TNT grenade. Or, to state it differently, as a matter of law du Pont, under the circumstances of this case, could not have foreseen that its detonators would be used by a person untrained in the handling of such explosives and in a manner that was never intended. See *Harper v. Remington Arms Co.,* 156 Misc. 53, 280 N.Y.S. 862 (Sup.Ct.1935), aff'd mem., 248 App.Div. 713, 290 N.Y.S. 130 (1st Dept. 1936), motion for leave to appeal denied, 272 N.Y. 675 (1937); Restatement, Torts 2d, § 388.

We have carefully considered all the contentions raised by appellants and believe that Judge Tenney's discussion of the facts and his analysis and application of the law are without fault.

Affirmed.

---

2. To assemble the devices, 2 caps (aluminum cylinders approximately 2″ long, two-thirds filled with explosives, and open at the top) were attached to 75″ lengths of fuse. The fuses were inserted into the open end of the caps and "crimped" to the caps. One fuse and cap went into the grenade, held in place by the priming adapter; the other fuse and cap, along with the unfused third cap, were attached with electrical tape to the outside of the grenade. The grenade was then lowered into a metal pipe which was 12″ long and 2½″ in diameter, and had a wooden "nosepiece" attached to one end. The fuses were coiled inside the pipe in a space approximately 5½″, by 2½″, and the device handed to another Navy man who ignited the fuses with a hot nichrome wire. A wooden tail piece was quickly attached before the device was thrown overboard.

3. Judge Tenney succinctly focused on the true nature of this case:
"In considering the applicable law, it is at least helpful to recognize this case for what it is not. It is not a case involving a product manufactured for sale or resale to the general public. It is not a case involving negligence in the manufacture, design or use of materials. It is not a case where the manufacturer had any freedom of choice as to manufacture, design, or use of materials. It is not a case where evidence has been submitted upon which foreseeability of the particular use involved herein could be predicated. It is not a case involving a product such as a heating brick, paint, agricultural or horticultural germicide or similar product, or other material which, while inherently dangerous in connection with certain use, is not generally known to be so. It is a case where the product was manufactured during wartime in accordance with detailed specifications for use by a particular branch of the Government, namely, Ordnance (or the Corps of Engineers as indicated on the containers); the user was as well or more fully informed of the hazards involved and the correct methods of use as was the manufacturer; the product, if not used by the originally intended user, was nevertheless used by an employee of the Government—i. e., a civilian employee of the Navy; and no evidence has been offered upon which a jury could find that the particular use (or user) involved herein was foreseeable by the manufacturer."
D.C., 268 F.Supp. at 801 (footnotes omitted).