## Staunton

### J. M. Turner & Company, Inc. v. Ward Delaney, Jr., Formerly Trading as Albemarle Sand and Gravel Co.

September 4, 1970.

Record No. 7142.

Present, All the Justices.

*B. Purnell Eggleston (M. Caldwell Butler; David C. Hjortsberg; Eggleston, Butler & Glenn, on brief), for plaintiff in error.*

*Charles R. Haugh (Stephen H. Helvin; Gordon & Haugh, on brief), for defendant in error.*

Gordon, J., delivered the opinion of the court.

Ward Delaney, formerly trading as Albemarle Sand and Gravel Co., brought an action against J. M. Turner & Company, Inc. under a contract dated July 15, 1964. Turner, denying liability and alleging that the July 15, 1964 writing was only a modification of a December 11, 1963 contract, filed a counterclaim against Delaney under the original contract.

At the conclusion of the evidence the court held as a matter of law that the July 1964 contract was a novation, rather than an amendment to the December 1963 contract, and dismissed the jury. From the order that entered summary judgment for Delaney on his claim and dismissed Turner's counterclaim we granted Turner a writ of error.

Turner needed sand and gravel to perform a contract with the Virginia Department of Highways for the improvement of a section of U.S. Route 29 north of Charlottesville. Delaney was engaged in the sand and gravel business on the Rivanna River near Charlottesville. In December 1963 they entered into the following contract:

"December 11, 1963

Mr. W. S. Boyd
J. M. Turner Co. Inc.
P.O. Box 1848
Roanoke, Va.

Re: Route #29 project.

Dear Mr. Boyd:

In accordance with our prior conversations we agree to furnish approximately 12,000 cubic yards of sub-base material for your project on route #29, North of Charlottesville.
This will consist of two types of material:

  A—Sand and gravel mixture consisting of coarse sand and gravel to a maximum size of two inches.
  B—Filler or binder material consisting of very fine sand and silt.

The price for this material will be $2.35 per cubic yard delivered to your job site. If possible we would like to stockpile this material on the job site, to be reloaded either by us or your company provided a suitable reduction in price can be agreed upon.

Very truly yours
ALBEMARLE SAND AND GRAVEL CO

/s/ Ward Delaney
Ward Delaney, President"

After a few loads of material had been delivered pursuant to the contract, inadequate equipment, severe weather conditions and financial difficulties prevented Delaney from further performing the contract. Even after Turner had furnished better equipment for Delaney's use at a nominal rental, Delaney advised Turner that he could no longer deliver material under the contract. Thereafter the following letter was mailed by Turner and agreed to by Delaney:

"July 15, 1964.

Albemarle Sand & Gravel,
Charlottesville, Virginia.

ATTENTION: Mr. Ward Delaney.

Gentlemen:

The following will constitute our agreement for your material taken out and moved by us in lieu of delivery to job by you.

We will pay you 50¢ per cu. yard, State pay quantities.

We will keep costs on the moving to the stockpile on the job, including rent on equipment used. Any difference between this cost plus the 50¢ per cu. yard paid you and $2.00 C.Y. State pay quantities will be split 50-50 with you.

Please sign and return one copy to us.

Yours very truly,

J. M. TURNER AND COMPANY, INC.

/s/ W. S. Boyd

W. S. Boyd,
Vice President."

Turner's vice president testified that Delaney's material was exhausted after Turner had removed 6,309.075 cubic yards.[1] Needing a total of 9,891 cubic yards for the project, Turner bought 3,581.925 cubic yards from another source. Turner did not pay Delaney for the 6,309.075 cubic yards furnished from Delaney's premises. De-

---

[1] Although the record is not clear, 6,309.075 cubic yards apparently included the few loads delivered by Delaney as well as those removed by Turner from Delaney's premises.

laney did not pay Turner the excess of the cost of the 3,581.925 cubic yards bought by Turner over the price stipulated in the December 1963 contract.[2]

The crucial issue is whether the December 1963 and July 1964 letters did or did not obligate Delaney to furnish 12,000 cubic yards of material or such lesser amount as Turner needed to complete the highway project.

Turner contends that the December 1963 and the July 1964 letters should be construed together, that so construed they require Delaney to furnish 12,000 cubic yards or the lesser amount needed (9,891 cubic yards). Delaney contends that the December 1963 and July 1964 letters are inconsistent and cannot be construed together, that the July 1964 letter extinguished all provisions of the December 1963 letter and substituted a completely new contract. So Delaney contends, and the trial court held, that Delaney had no obligation to furnish any specified quantity of material.

Under the first and second paragraphs of the December 1963 letter, Delaney agreed to furnish approximately 12,000 cubic yards of specified material. Under the third paragraph of the letter Turner agreed to pay $2.35 for each cubic yard extracted and delivered to Turner's job site. The July 1964 letter, written by Turner and addressed to Delaney, purports to relate only to "your material taken out and moved by us in lieu of delivery to job by you"—that is, to material on Delaney's premises extracted and delivered to the job site by Turner. For such material, Turner agreed to pay Delaney 50¢ per cubic yard, instead of the $2.35 to be paid under the December 1963 letter for material extracted and delivered by Delaney.

The December 1963 and July 1964 letters, read together as set forth in the preceding paragraph, form an integrated contract between the parties. And where parties have entered into more than one document relating to a business transaction, "these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others". 3 *Corbin Contracts*

[2] In its counterclaim Turner prayed judgment for $7,734.17, being the excess of (i) the cost of acquiring and hauling material from Delaney's premises ($13,801.74), (ii) the amount paid for material bought from another source ($15,402.28), and (iii) the cost of moving certain materials from "stockpile to spreader and loading truck" ($1,774.00) over the total amount payable by Turner to Delaney under the December 1963 contract if 9,891 cubic yards had been delivered ($23,243.85). Nothing in this opinion should be interpreted as approving this method of calculating the amount properly payable under the counterclaim, a point that was not reached by the trial court.

§ 549 at 188 (1950); *see Parker* v. *Murphy,* 152 Va. 173, 146 S.E. 254 (1929).

" 'The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or paragraph can be omitted in construing the contract if it can be retained and a sensible construction given to the contract as a whole.' " *Ames* v. *American Nat'l Bank,* 163 Va. 1, 39, 176 S.E. 204, 216 (1934). Since the July 1964 letter contains no provision inconsistent with the requirement of the December 1963 letter that Delaney furnish material for the project not exceeding 12,000 cubic yards, that requirement must stand.

We reject the contention that the July 1964 letter extinguished the provisions of the December 1963 letter and substituted a new contract. " 'In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed.' " *Land Corporation* v. *McFarland,* 203 Va. 387, 392, 124 S.E.2d 212, 215 (1962). The July 1964 letter standing alone is not an enforceable contract since it does not even describe the subject matter of the contract between the parties.

We therefore reverse the order appealed from. The parties having joined issue on Delaney's contention that Turner could have removed at least 9,891 cubic yards of material from Delaney's premises, the case is remanded for determination of that issue as well as the issue of damages.

*Reversed and remanded.*

COCHRAN, J., concurring in part and dissenting in part.

I agree with the majority that the July 1964 letter was an amendment to the December 1963 contract and not, as the lower court held, a novation. However, I do not agree that, read together, the two writings form an unambiguous contract.

In my opinion the term "your material", mentioned in the second writing, is susceptible to at least two conflicting interpretations. It may mean the 12,000 cubic yards of material originally required, as Turner contends, or it may mean simply the available unspecified quantity of Delaney's sand and gravel, as the lower court held, depending upon the intention of the parties.

To determine what the parties intended, resort must be had to parole evidence, for the intent cannot be found in the writings them-

selves. *Shockey* v. *Westcott*, 189 Va. 381, 53 S. E. 2d 17 (1949). Indeed, parole evidence was introduced, without objection, by both parties.

Such evidence was, therefore, properly admitted, and it resolved some ambiguities. For example, the term "job site", twice used in the original agreement, was found to have different meanings. Delivery of materials to the job site for $2.35 per cubic yard required delivery to Turner's spreader on the job. The alternative suggestion of delivery at a lower price to a stockpile on the job site contemplated another location to be determined later.

Further, it appears that the parties initially contracted, not for approximately 12,000 cubic yards of material, but for such quantity, not exceeding approximately 12,000 cubic yards, as might be required for the project. *See Webber* v. *Johnston*, 214 Cal. 378, 5 P. 2d 886 (1931). Neither party suggests that Delaney was required to furnish more than the 9891 cubic yards actually used on the job.

Here, the court erred by construing the term "your material" as used in the July 15, 1964 agreement. When a contract is clear and unambiguous on its face, or is rendered so by admissible parole evidence, the court, rather than the jury, should construe it. However, if the extraneous evidence is conflicting, or even if it is not conflicting but fairminded men might reach different conclusions from it, the case becomes a proper one for jury determination. *Geoghegan* v. *Arbuckle Bros.*, 139 Va. 92, 100-101, 123 S. E. 387, 389 (1924).

Parole evidence did not render the present contract so clear and unambiguous as to permit the court to construe it. This issue, therefore, should have been submitted to the jury. *See Portsmouth Gas Co.* v. *Shebar*, 209 Va. 250, 258, 163 S.E. 2d 205, 211 (1968); *Greater Richmond Civic Recreation, Inc.* v. *A. H. Ewing's Sons, Inc.*, 200 Va. 593, 596, 106 S. E. 2d 595, 597 (1959).

A jury might decide that "your material" means only the type, but not the quantity, of Delaney's sand and gravel, and Delaney would then prevail. On the contrary, a jury could decide that "your material" means the 12,000 (9891) cubic yards of Delaney's material required by Turner. If so, the issues of fact arising from Turner's counterclaim must be decided. The jury must determine whether, as Delaney claims, he had at least 9891 cubic yards which Turner could have removed and, if not, what damages to Turner resulted. Turner's alleged damages are incorrectly set forth in the counterclaim

because they are computed on the basis of the original agreement rather than the 1964 amendment which changed the contract price.

I would reverse the judgment of the lower court and remand the case for a determination of all these issues and not just those arising from Turner's counterclaim.