**Joseph W. SPANGLER, Appellant,**

**v.**

**KRANCO, INC., Appellee.**

**No. 72–2357.**

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1973.

Decided June 28, 1973.

---

James A. Eichner, Richmond, Va. (Allen, Allen, Allen & Allen, Richmond, Va. on brief) for appellant.

Edward A. Marks, Jr., Richmond Va. (Frank B. Miller, III, and Sands, Anderson, Marks & Clarke, Richmond, Va., on brief) for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

In this diversity suit Joseph W. Spangler appeals from the action of the district court in directing a verdict in favor of the defendant Kranco, Inc.

To a large degree the facts are undisputed. On March 25, 1971, Spangler was struck by an overhead pendant crane while working as a pipefitter on a platform at a Reynolds Metals Company plant which was then under construction in Richmond, Virginia. At the time of his injury Spangler was an employee of Union Plumbing and Heating, a sub-contractor of Reynolds[1], and the crane was being operated by a Reynolds employee. The Crane which injured Spangler was one of three which had been manufactured by Kranco, Inc. in accordance with the plans and specifications of Reynolds. Kranco shipped the cranes to Richmond and under the purchase agreement Reynolds had the responsibility of installing them in the plant. While Reynolds purchased the three cranes primarily for the purpose of moving large coils of aluminum in its manufacturing operation, they were initially installed and utilized incident to the construction of the facility. At the time the crane was manufactured and shipped by Kranco it was not equipped with any bells or warning device to be activated when it was placed in motion and neither the proposals nor the plans and specifications of Reynolds called for such a warning device to be installed. In his complaint the plaintiff alleged negligence on the part of Kranco in failing to equip the crane with such a bell or other warning device and further charged that its failure to do so rendered the crane inherently dangerous. Concluding that the evidence supported neither of the theories advanced by the plaintiff, the district judge took the case from the jury. We affirm.

Suggesting the absence of controlling Virginia authority, the plaintiff appears to rely heavily upon our decisions in Spruill v. Boyle Midway, Incorporated, 308 F.2d 79 (4 Cir. 1962), and Gardner v. Q. H. S., Inc., 448 F.2d 238 (4 Cir. 1971). Reliance on *Spruill* misses the mark completely since it involved a potentially lethal product (furniture polish) which the court found to be inherently dangerous in the case of an infant whose ingestion thereof fell within the area of reasonable foreseeability. In *Gardner*, we recognized that

"the law has now reached the stage of development that a supplier and a manufacturer of a chattel are liable to all whom they should expect will use the chattel or be endangered by its use if (a) they know or have reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, (b) they lack reason to believe that the user will realize the potential danger, and (c) they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous. 2 Restatement of Torts, 2d §§ 388 and 395 (1965 Ed.)"

Applying the criteria of the Restatement in that case, we recognized the presence of a latent hazard and concluded that the defendant knew or should have

---

1. Under this arrangement Reynolds became a statutory employer of Spangler within the meaning of the Virginia Workmens' Compensation Act and was therefore immune from any common law action by him. Va.Code Ann. §§ 65.1–30 and 65.1–40 (1968). *See* Slusher v. Paramount Warrior, Incorporated, 336 F.Supp. 1381 (W.D.Va.1971).

known that its product would be subjected under certain circumstances to uncontrolled heat which would exceed the normal ignition point of the paraffin content of the hair curlers.

■ The rationale of *Gardner*, however, places no liability upon Kranco in the present case. There was no defect in the crane itself nor in it any latent quality which caused Spangler's injury. True, there was no bell or warning device but the reasonable need for such equipment depended upon the environment in which it was used by Reynolds after it was received in Richmond. Assuming that its use in the construction phase required a warning device, such a hazard was open and obvious to Reynolds and its personnel and the responsibility rested upon them not upon Kranco. Clearly, the undisputed facts place this case outside the ambit of the *Restatement* principle as applied in *Gardner*. Nor do we perceive any deficiencies of design such as those present in Zahora v. Harnischfeger Corporation, 404 F.2d 172 (7 Cir. 1968), and Pike v. Hough, 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (Sup.Ct.Cal.1970), cited to us by plaintiff in support of his position.

■ We find additional support for the action of the district judge in the principle that the products liability rule holding a manufacturer liable does not apply where the product has been manufactured in accordance with the plans and specifications of the purchaser except when such plans are so obviously dangerous that they should not reasonably be followed. Littlehale v. E. I. du Pont, etc. & Co., 268 F.Supp. 791, 802 n. 16, (S.D.N.Y.1966), aff'd 380 F.2d 274 (2 Cir. 1967); Davis v. Henderlong Lumber Co., 221 F.Supp. 129 (N.D.Ind. 1963). *Cf.* Greater Richmond, etc., Inc.

v. A. H. Ewings Sons, Inc., 200 Va. 593, 106 S.E.2d 595. While we do not suggest that the foregoing principle should be applied to immunize a manufacturer from liability in every case, we are of the opinion that Kranco acted reasonably in relying upon Reynolds' industrial expertise and following its plans and specifications, especially since it is conceded that neither the National Safety Code nor the Occupational Health and Safety Act require warning devices on pendant operated cranes such as the one here in question.

Finally, the plaintiff points out that Raymond Sheets, a representative of Kranco, testified that he visited the plant some four months prior to Spangler's injury and suggested to Reynolds that a warning device be placed on the three cranes, but that his testimony on this point was disputed by representatives of Reynolds. In our opinion, whether Sheets offered such gratuitous advice is of no operative significance in this controversy, since the hazard was one which by its nature was open and obvious to Reynolds as the operator of the cranes.

The judgment of the district court will be affirmed.[2]

Affirmed.

BUTZNER, Circuit Judge (dissenting):

I dissent because I believe the district court erred in withdrawing the case from the jury. Under Virginia law, the manufacture of a product, which— though not dangerous in itself—becomes dangerous when it is used in its customary or ordinary manner, owes a duty of reasonable care to any person who might foreseeably be injured because of the product's negligent design or manufacture. Olds v. Wood, 196 Va. 960, 86 S.

---

**2.** Upon this appeal the plaintiff asks that we consider strict tort liability and warranty as amended theories of recovery. In Chestnut v. Ford Motor Company, 445 F.2d 967 (4 Cir. 1971), we stated that the standard of safety imposed on the manufacturer of a product "is essentially the same whether the theory of liability is labeled warranty or negligence or strict tort liability," and under our view of this case the plaintiff fares no better on these additional alternative theories.

E.2d 32, 34 (1955) (dictum); Restatement (2d) of Torts §§ 388, 395, 398 (1965). While it may be said that Kranco's crane was not inherently dangerous, it cannot be doubted that it became dangerous when it silently bore down on Spangler as he performed his assigned task in its path. Customer specifications do not insulate a manufacturer from liability to third persons who might foreseeably be injured by negligent design or fabrication, although the specifications might offer the manufacturer a defense in an action brought by the customer. *Cf.* Wirth v. Clark Equipment Co., 457 F.2d 1262, 1267 (9th Cir. 1972), cert. denied, 409 U.S. 876, 93 S.Ct. 127, 34 L.Ed.2d 129 (1972).[1] Here there is no suggestion that Spangler acquiesced in the specifications Reynolds furnished Kranco.[2] Nor does Kranco's alleged compliance with industry standards or safety legislation, even if proved, place the question of its exercise of due care beyond inquiry of the jury. Texas & P. Ry. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905 (1903); Bly v. Southern Ry., 183 Va. 162, 31 S.E.2d 564, 569 (1944).

When reasonable men can draw competing inferences of negligence from the evidence, the seventh amendment requires that the issues be submitted to the jury. Moore v. Guthrie Hospital, Inc., 403 F.2d 366, 367 (4th Cir. 1968). From the following proffer of evidence and from the following testimony admitted at the trial, I believe that reasonable men could differ over the issue of whether Kranco negligently designed and manufactured the crane with knowledge that the crane might foreseeably injure third persons when used in the customary manner:

¶ The excluded opinion testimony proffered by Spangler's expert witness that warning devices should have been installed on the Kranco crane in the circumstances under which it was in use at the time of Spangler's injury and that a reasonably prudent manufacturer would have installed one.

¶ The expert's estimate that installing a warning bell on the Kranco crane would cost about $50, an insignificant amount compared with the $35,000 cost of the crane.

¶ The testimony of Kranco's employee that he told two Reynolds employees a warning device was needed on this crane because of the type of load it carried.

¶ The testimony of Kranco's president that Kranco omits warning bells not called for in customer specifications even if the company knows that using the crane without a bell is hazardous, unless the specifications violate the National Safety Code or the Occupational Health and Safety Act.

I would reach a similar result if the action were based on breach of warranty because Virginia has abolished the need for privity. Va.Code Ann. § 8.2–318 (1965); *Cf.* Chestnut v. Ford Motor Co., 445 F.2d 967, 968 (4th Cir. 1971).

---

1. Cases upon which Kranco relies do not conflict with this principle. In Greater Richmond Civic Recreation, Inc. v. A. H. Ewing's Sons, Inc., 200 Va. 593, 106 S.E.2d 595 (1959), the contractor was permitted to assert the defense that it had complied with the owner's specifications in an action brought by the owner, not by a third party. In Littlehale v. E. I. du Pont de Nemours & Co., 268 F.Supp. 791 (S.D.N.Y.1966), aff'd 380 F.2d 274 (2d Cir. 1967), the plaintiff abandoned his claim of negligent design and manufacture, and the evidence negated any need to warn of the dangers associated with the use of the defendant's product. In Davis v. Henderlong Lumber Co., 221 F.Supp. 129 (N.D.Ind. 1963), the evidence failed to show that a contractor who followed an architect's plans and specifications knew, or should have known, of the danger involved.

2. Although Spangler was a statutory employee of Reynolds within the meaning of the Compensation Act, Virginia law permits this action against Kranco. Va. Code Ann. §§ 65.1–41, –42 (1973). *See* Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575, 580 (1951).