Brenda H. AUSTIN;  Liberty Mutual Insurance Company, Plaintiffs–Appellants,

v.

CLARK EQUIPMENT COMPANY; Hyster Company, Defendants–Appellees,

and

K–D Manitou, Incorporated;  Hyster–Yale Material, Incorporated;  Nacco Industries, Incorporated, Defendants.

Product Liability Advisory Council, Incorporated, Amicus Curiae.

No. 93–1701.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1994.

Decided March 6, 1995.

834

**ARGUED:** S.D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellants. Henry M. Sackett, III, Edmunds & Williams, Lynchburg, VA, Michael Thomas Wharton, Wharton, Levin, Ehrmantraut, Klein & Nash, Annapolis, MD, for appellees.

**ON BRIEF:** Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, P. Brent Brown, Carter, Brown & Osborne, P.C., Roanoke, VA, for appellants. Kenneth J. Ries, Johnson, Ayers & Matthews, Roanoke, VA, for appellee Clark Equipment; David B. Hart, Gary B. Tegencamp, Wooten & Hart, P.C., Roanoke, VA, for appellee K–D Manitou. Kenneth S. Abraham, University of Virginia School of Law, Charlottesville, VA; Stephen J. Goodman, Jones, Day, Reavis & Pogue, Washington, DC, for amicus curiae.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, NIEMEYER, Circuit Judge, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge OSTEEN wrote the opinion, in which Justice POWELL and Judge NIEMEYER joined.

## OPINION

OSTEEN, District Judge:

Brenda H. Austin was impaled by the mast of a carpet lift truck while working at Lee's Carpet, Inc., a division of Burlington Industries, Inc. ("Burlington"). In the ensuing products liability action, Austin alleged, *inter alia*, that Hyster Company ("Hyster"), the manufacturer of Austin's lift truck, Clark Equipment Company ("Clark"), the manufacturer of the second lift truck involved in the accident, and K–D Manitou, Inc. ("Manitou"), the manufacturer of the mast on the second lift truck, were negligent and breached the implied warranty of merchantability (Hyster, Clark, and Manitou are collectively referred to as "Appellees"). The district court granted summary judgment holding that the products were not unreasonably dangerous because the alleged defects were open and obvious. Agreeing with the district court's decision to grant Appellees' motion for summary judgment, we affirm.

I.

The catastrophic accident forming the basis of this litigation occurred on September

21, 1988, at a Lee's Carpet warehouse in Glasgow, Virginia. Austin and James McDaniel were both operating forklift-type trucks with long poles or masts used to move rolls of carpet. Austin, driving the Hyster lift truck, entered the warehouse to retrieve a roll of carpet. After loading a roll of carpet on the mast, Austin proceeded to leave the warehouse, driving in reverse, the correct direction. Approaching an intersection, Austin slowed down, but did not stop. She does not remember whether she sounded her horn at the crossing. As Austin turned, she looked forward to make sure her load cleared the storage racks. When she turned around, looking backwards, she saw the other forklift and was pierced by the mast on McDaniel's truck.

Prior to the accident, McDaniel, operating a Clark lift truck with a Manitou mast,[1] was loading carpet onto a wagon. After loading a third roll of carpet on the wagon, McDaniel backed up to move his mast around the wagon. He then began moving forward with the mast some distance off the floor and in a straight forward position to retrieve a fourth roll of carpet. As McDaniel was moving forward, Austin rounded the intersection, and the collision occurred. McDaniel did not sound his horn before impact. Both the Clark and Hyster lift trucks had operational flashing lights at the time of the accident. Neither lift truck was equipped with rear motion alarms or rear view mirrors.

On September 19, 1990, Austin filed a complaint against five defendants alleging claims based on negligence, strict liability, and breach of express and implied warranties. Liberty Mutual Insurance Company ("Liberty Mutual"), as Austin's employer's workers' compensation carrier, was added as a party plaintiff (both Austin and Liberty Mutual are referred to as "Austin" herein). Two defendants were dismissed because they were not proper parties to the action. Virginia does not recognize a cause of action based on strict liability in tort; and, the strict liability claim was dismissed. The claims based on express warranties and the implied warranty of fitness for a particular purpose were withdrawn in response to Appellees' motion for summary judgment. The remaining claims against Hyster, Clark, and Manitou were allegations of design defect and failure to warn based on negligence and breach of the implied warranty of merchantability.

Appellees moved for summary judgment on the following grounds: (1) that any defects in the lift trucks or mast were open and obvious; (2) that Burlington was a sophisticated user of the products; (3) that the actions of McDaniel and Burlington were superseding and intervening causes of Austin's injuries;[2] and (4) that, as a matter of law, Austin was contributorily negligent. Manitou also argued that Austin assumed the risk of injury as to the mast assembly. The district court granted summary judgment, holding that risks created by the absence of rear view mirrors, audible motion alarms, adequate flashing lights, and a mast that did not obstruct vision were open and obvious, barring Austin's claims, 821 F.Supp. 1130. Austin is now before the court on appeal.

## II.

The granting of a motion for summary judgment is reviewed de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate in those cases where it is established through pleadings, affidavits, depositions, and other discovery documents that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, it is the burden of the moving party to show the court that no material factual issues exist for trial. Of course, the court must draw any permissible inference from the underlying facts as established in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538

---

1. The mast assembly was manufactured by Manitou but was attached to the lift truck by mechanics at Lee's Carpet.

2. Appellees also claim that the alleged defects were not the proximate cause of the accident.

(1986); *Pulliam Inv. Co. v. Cameo Prop.*, 810 F.2d 1282, 1286 (4th Cir.1987).

When the moving party has carried its burden, the nonmoving party must come forward with evidence which shows more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Rather, the nonmoving party must convince the court that upon the record taken as a whole a rational trier of fact could find for the nonmoving party. *Id.* at 248–49, 106 S.Ct. at 2510.

The district court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The parties agree that Virginia law controls this action. Virginia law provides that:

> The standard of safety of goods imposed on the seller or manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence.... Under either the warranty theory or the negligence theory the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.

*Logan v. Montgomery Ward & Co.*, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). A product is unreasonably dangerous if it is "defective" in assembly, manufacture or design, or if not labeled with an adequate warning. *Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1043 (4th Cir.1983).

### III.

Case law has established that a manufacturer is not liable for failing to warn of an "open and obvious" defect. *See Spangler v. Kranco, Inc.*, 481 F.2d 373, 375 (4th Cir. 1973); *Marshall v. H.K. Ferguson Co.*, 623 F.2d 882, 886 (4th Cir.1980). A risk is open and obvious if the person using the product is or should be aware of the risk. *Spangler,*

481 F.2d at 375. A warning is therefore superfluous because the user is or should be aware of the obvious danger. Restatement (Second) of Torts, § 388, reflects this principle, stating that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probably use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

If the dangerous condition is open and obvious, then the requirement of subsection (b) will prevent a manufacturer from being subject to liability.

In the case at bar, a reasonable jury could only reach one conclusion, and summary judgment was properly granted. Appellees are not liable for failing to warn Austin of the open and obvious nature of hazards caused by the limited visibility of the carpet lift trucks. Burlington and Lee's Carpet were aware of the limited visibility as evidenced by the implementation of corporate policies designed to enhance the safety of employees. For example, employees were required to drive forklifts with the mast lowered to guard against injuries and to increase the range of vision. The Hyster and Clark forklifts were equipped with manual horns, and flashing lights were installed on the machines by mechanics at Lee's Carpet. Austin and McDaniel had been trained in operating the carpet forklifts and were likewise aware of the risks associated with the limited visibility of the machines.

## IV.

We are not excluding the possibility that there may be an unreasonably dangerous product with an open and obvious design defect. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 99, at 698 (5th ed.1984) (discussing the meaning of a design defect and explaining that a product with an open and obvious defect may still be unreasonably dangerous if it "could easily have been designed safer without great expense or effect on the benefits or functions to be served by the product"). However, the facts of this case do not present such a scenario.

In this case, the district court held that the "open and obvious" defect did not render the forklifts unreasonably dangerous, and Appellees were therefore not liable for failing to install rear view mirrors, audible alarms, and rotating beacon lights and were also not liable for providing an allegedly inadequate mast. Moreover, as indicated by the district court, "[w]hen a customer exercises an option to purchase a product without a safety feature, it is axiomatic that the manufacturer should not be held liable for damages which that safety feature may have prevented." *Butler v. Navistar Int'l Transp. Corp.*, 809 F.Supp. 1202, 1209 (W.D.Va.1991) (footnotes omitted). Likewise, a manufacturer is not liable for a design defect if the product is manufactured according to the buyer's specifications, unless the specifications are obviously dangerous and should not be followed. *Spangler*, 481 F.2d at 375.

Appellees were not required to manufacture an accident-proof product and could not force Burlington to purchase lift trucks with the utmost safety features. *Marshall v. H.K. Ferguson Co.*, 623 F.2d 882, 886 (4th Cir.1980) (stating that "the rule is well settled that neither designer nor manufacturer has a legal duty to ... produce a ... product incorporating only features representing the ultimate in safety."); *Butler*, 809 F.Supp. at

1209. Clark and Hyster offered audible alarms and strobe lights as optional safety devices that were not purchased by Burlington. The decision by Burlington not to attach audible alarms, rear view mirrors, and overhead lights [3] was not unreasonable, and Appellees should not be liable for manufacturing products in accordance with Burlington's purchase order. As in *Spangler*, the reasonable need for audible alarms, rear view mirrors, and strobe lights depended upon the environment in which the lift truck was used by Burlington, and the responsibility for these warning devices rested upon Burlington, not Appellees; consequently, there was no deficiency in design. *See Spangler*, 481 F.2d at 375 (stating that the reasonable need for a bell or warning device on a crane depended on the environment in which it was used).[4]

The regulations promulgated pursuant to the Occupational Safety and Health Act recognize this principle of responsibility. The regulations require compliance with the American National Standards for Powered Industrial Trucks, Part II, ANSI B56.1–1969. 29 C.F.R. § 1910.178(a)(2). These standards indicate that the "user shall determine if operating conditions require the truck to be equipped with additional sound-producing or visual (such as lights or blinkers) devices, and be responsible for providing and maintaining such devices." ANSI B56.1, Part II, § 4.15.2.

## V.

For the reasons discussed herein, the district court's decision to grant Appellees' motion for summary judgment is

*AFFIRMED.*

---

3. There were flashing lights on the Clark and Hyster lift trucks; however, Austin argues that the lights were inadequate.

4. Spangler was working at Reynolds Metals Company when he was injured by an overhead crane. Kranco, Inc. manufactured the crane in accordance with specifications of Reynolds. The court stated that the addition of warning devices was the responsibility of Reynolds, not Kranco.