The ORION INSURANCE COMPANY, LTD.

v.

UNITED TECHNOLOGIES CORP.
and Amtel, Inc.

Richard GEHRING, as Executor and Personal Representative of the Estate of Herman W. Gehring, Deceased

v.

UNITED TECHNOLOGIES CORP.
and Amtel, Inc.

Civ. A. Nos. 78–1779, 78–2972.

United States District Court,
E. D. Pennsylvania.

Oct. 8, 1980.

Phillip D. Bostwick, Shaw, Pittman, Potts & Trowbridge, Washington, D. C., and Daniel Mungall, Jr., Philadelphia, Pa., for Orion and Gehring.

J. Grant McCabe, III, Philadelphia, Pa., for United Tech.

John B. Martin, J. Bruch McKissock, Philadelphia, Pa., for Amtel.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant Amtel, Inc. has moved for summary judgment.[1] The resolution of this motion depends upon whether the manufacturer of a component part which was manufactured to the specifications of a third party and in which there was no manufacturing defect can be held liable for a *design* defect allegedly stemming from the use to which the third party put the part.

This case arises from the crash of a helicopter in Jeddah, Saudi Arabia, which was unloading a freighter anchored in that port. The helicopter crashed into the hold of the ship, killing the pilot. These suits were brought by the representative of the deceased pilot and by the insurer of the helicopter. The defendants are United Technologies Corporation (UTC) which through its Sikorsky division manufactured the helicopter and Amtel, Inc. (Amtel) which through its Fenn Manufacturing division (Fenn) machined the "stationary star" (star) of the helicopter. A stationary star is a portion of the main rotor head assembly on a helicopter. It is undisputed that following the crash the stationary star of the helicopter in question was in a fractured condition. The plaintiffs allege that the star, weakened by fatigue cracks broke apart while the helicopter was in flight, thus causing the accident. The defendants claim that the star was fractured by the force of the crash.

Plaintiffs' complaint asserts claims based on negligence and strict liability. The complaint alleges that both defendants were negligent as to the design, *manufacture, and inspection* of the helicopter and the star. The strict liability claim alleges defective design *and manufacture.* In addition, the plaintiffs also assert negligence and strict liability based on the failure of both defendants to warn potential users of the defective condition of the helicopter and the star.

The allegations of the complaint are not determinative. On a motion for summary judgment, I may consider affidavits, depositions, answers to interrogatories and like matter. In this case, Amtel directs my attention to interrogatories it served on the

---

1. In reaching a decision on this motion, I rely on memoranda submitted by Amtel, the reasoning of which I generally adopt and approve.

plaintiffs which inquired, *inter alia*, whether or not the plaintiffs alleged that the stationary star was defectively machined. Plaintiffs' response was as follows: "As of the date of serving this supplemental answer [December 27, 1979], Plaintiffs have no evidence available to them of a machining defect in the stationary star that was installed on the Aircraft at the time of the crash." Plaintiffs have not supplemented this answer. The stationary star is the property of the plaintiff, Orion Insurance Company, which as the insurer of the helicopter now owns the wreckage. Thus, except for the time when the star was being tested by the defendants, plaintiffs have had since 1976 when the crash occurred to examine the star for a manufacturing defect. Furthermore, before the answer was filed both the plaintiffs and defendant, UTC, had extensively tested the star and neither found a machining defect. Thus, although plaintiffs' answer above is styled as if further testing would be forthcoming, it is really a concession that there is no evidence to create a factual issue regarding the manufacture of the star.[2]

It is clear that Amtel's only involvement with the events which gave rise to this lawsuit is the fact that it "machined" the stars for Sikorsky's helicopters. The already forged stars would arrive at Amtel's Fenn division. Fenn personnel would then machine the star to the specifications provided by Sikorsky. The machining process included "lathing of the interior diameter of the stationary star, and grinding the star to various dimensions." Fenn inspectors would inspect the star after the process and then pass it along to Sikorsky inspectors located at the Fenn plant, if the star met with their approval then it would be placed in a bonded storage area. Fenn also machined an inner collar for the star which like the star was manufactured to specifications supplied by Sikorsky, and inspected by Sikorsky personnel.

The drafters of the Federal Rules of Civil Procedure anticipated that discovery would serve to narrow the allegations of the complaint. *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2001, at 15 (1970). It has served that purpose here. Plaintiff has in effect conceded that it cannot prove a manufacturing defect in Amtel's product. That leaves only its design related allegations. Thus, Amtel has filed the present motion for summary judgment posing the question: can a component parts manufacturer who manufactured a part to another's specifications be liable for a design defect.

To answer this question, I must integrate two little explored lines of precedent: the liability of one who manufactures his product according to specifications of his commercial buyer and the liability of component parts manufacturers when the final product into which their component was incorporated causes injury. These two lines are pertinent because Fenn manufactured the star to Sikorsky's specifications and then sold the product to Sikorsky and because the design defect arose in this case, if at all, from Sikorsky's incorporation of the star into their final product, the helicopter.

The plaintiffs cite *Schreffler v. Birdsboro*, 490 F.2d 1148 (3d Cir. 1974) for the proposition that even one who manufactures a product to another's specifications can be liable under § 402A. In *Schreffler*, the Third Circuit affirmed a directed verdict which I granted for the defendants. In the course of its opinion, the court observed, "[t]he specifics of the machinery . . . represented a joint effort of the two companies." *Id.* at 1150. Plaintiffs' reliance on this case is misplaced both because it did not involve specifications and because liability was not imposed.

2. Plaintiffs have agreed that further discovery of Amtel would not lead to the discovery of a manufacturing defect. They declined the benefit of a special discovery period in which to develop additional facts to support their theories against Amtel, conceding that they will not be prejudiced by a decision of this motion on the current record. Letter of Phillip D. Bostwick to the Hon. Daniel H. Huyett, 3rd, October 24, 1980, Doc. No. 248.

In *Spangler v. Kranco, Inc.*, 481 F.2d 373 (4th Cir. 1973), the United States Court of Appeals for the Fourth Circuit held that a manufacturer which built a crane in accordance with specifications supplied by the customer and which failed to equip the crane with a warning device to be activated when the crane was in motion could not be held liable for injuries sustained by the customer's employee when struck by the crane. The plaintiff had alleged counts based on negligence and strict liability relying upon defendant's failure to equip the crane with a warning device. Emphasizing that the crane had been produced to "the plans and specifications of the purchaser," the count concluded that Kranco's reliance on those plans was reasonable and therefore it was not liable for negligence. On the strict liability count, the court found there was no defect in the crane. The court noted "the products liability rule holding a manufacturer liable does not apply where the product has been manufactured in accordance with the plans and specifications of the purchaser except when such plans are so obviously dangerous that they should not reasonably be followed. *Id.* at 375, *citing Littlehale v. E.I. du Pont & Co.*, 268 F.Supp. 791, 802 n.16 (S.D.N.Y.1966), *aff'd*, 380 F.2d 274 (2d Cir. 1967). Thus, the court inquired whether reliance on the plans was reasonable and whether the plans were so obviously dangerous that they should not have been followed.

Before applying these rules to the present case, I note that this case may be governed by Pennsylvania law so I must consider whether the Pennsylvania Supreme Court's opinion in *Azzarello v. Black Bros., Co.*, 480 Pa. 547, 391 A.2d 1020 (1978) effects the applicability of the *Kranco* rule in Pennsylvania.

In *Azzarello*, the Pennsylvania Supreme Court held that negligence concepts have no place in Pennsylvania 402A law so far as the trial, evidence, and jury charge are concerned. *See Azzarello v. Black Bros., Co.*, 480 Pa. at 553, 391 A.2d at 1020; *Bailey v. Atlas Power Co.*, 602 F.2d 585 (3d Cir. 1979). But the case does not eliminate negligence concepts such as reasonableness from a

court's determination of liability as a matter of law. This motion presents the question of when and to whom liability under § 402A should attach. Reasonableness can be considered on this type of inquiry. *Holloway v. J. B. Systems, Ltd.*, 609 F.2d 1069, 1071 n.5 (3d Cir. 1979); *Abdul–Warith v. Arthur G. McKee and Co.*, 488 F.Supp. 306, 314 (E.D.Pa.1980). Accordingly, I find that even if Pennsylvania law applies, consideration of the factors of reasonableness applied by the *Kranco* court to a specifications case is not precluded by *Azzarello*.

With respect to the negligence count, it cannot be said that in relying on the Sikorsky specifications the defendant, Amtel, acted unreasonably. They had a past course of dealings with Sikorsky. Sikorsky had an established reputation for producing aircraft. It was not unreasonable as a matter of law for Amtel to rely on the plans.

On the issue of whether Amtel can be held strictly liable it appears that similar considerations apply. Amtel was dealing not with specifications submitted by a consumer but by a business entity with superior knowledge in the field of aviation.

In *Taylor v. Abbe, Inc.*, 516 F.2d 145 (3d Cir. 1975), the Third Circuit addressed the liability of a component part manufacturer. In that case, the defendant had manufactured a replacement part for a mill. It offered to install a safety guard but the owner refused. The plaintiff's hand was caught in the unguarded teeth, causing his injuries. He sued the manufacturer of the replacement part who had made the teeth and had offered to install the guard. His suit was based on an allegation of design defect against the component part manufacturer. Applying Pennsylvania law, and dismissing the suit, the court stated "we believe that the requirement that liability only be imposed where the manufacturer is responsible for the defective condition is necessarily implicit in § 402A and the absence of case law is probably a result of the fact that, in most cases, the manufacturer's responsibility is either self–evident or is arguably negated by such traditional doc-

trines as superseding cause or change in condition." *Id.* at 147. The court had been unable to find any cases directly on point, noting that Pennsylvania has imposed liability on a supplier of component parts only when the part itself is defective. *Id.* at 147 n.3, *citing Burbage v. Boilder Engineering & Supply Co.*

In a similar case, *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir. 1978), the Third Circuit addressed the issue: "[o]n whom to place design responsibilities where a product has been manufactured and assembled in more than one stage." *Id.* at 385. In *Verge*, the plaintiff was injured when he was hit by a garbage truck that was backing–up. The plaintiff maintained that the truck should have been equipped with a safety buzzer that would warn any one behind the truck that it was about to move in reverse. Ford had produced the chassis for the truck in question but it had undergone substantial body work after it left Ford. *Id.* at 386. The court listed three factors to be used to determine who has the responsibility for installing safety devices: (1) trade custom, (2) expertise, and (3) practicality. *Id.* at 387. Applying these factors, the court concluded that Ford was not responsible for the defective condition of the truck. *Id.* at 389, *citing Taylor v. Paul O. Abbe, Inc.*, 516 F.2d 145, 147 (3d Cir. 1975).

I think that the present case is squarely within the precedent of *Taylor* and *Verge*. As the *Taylor* court noted, "[t]here is no dispute . . . with respect to the critical facts, and thus the only issue before [me] is the legal significance of those facts." 516 F.2d at 149. To the extent that one may argue that "responsibility" is a negligence concept and thus unacceptable as a standard after *Azzarello*, I reject that argument for reasons stated above, *i. e.* that this is a summary judgment motion where the only issue is whether there can be liability as a matter of law.

Plaintiffs also state a claim based upon Amtel's failure to warn. This allegation is based on what the defendant reasonably knew or should have known. In strict liability, the duty to warn arises when a product is defective ("unavoidably unsafe") and the defect cannot be remedied by any currently known means. In this situation the product is not defective within the meaning of § 402A if it is accompanied by a warning. *See* Restatement (Second) of Torts § 402A, Comment k. With respect to these claims, the following facts bear repeating: (1) there was no manufacturing defect in the star (2) Sikorsky set the specifications for the star (3) the star in question went through two inspections, one by Fenn personnel and one by Sikorsky personnel, before it was accepted to ensure that it met those specifications (4) Sikorsky is in the business of manufacturing aircraft; Fenn is not and (5) I have held that as a matter of law it was reasonable for Fenn to rely upon Sikorsky's specifications.

On the negligence count, assuming for the purposes of this motion, only, that the star as constructed per the Sikorsky specification was inadequate for the purpose to which Sikorsky put it, there is no reason why defendant Amtel (through Fenn) should have known this. To establish a duty to warn, the plaintiffs rely upon the fact that after the production of the star involved in this crash, the alloy from which the star was made was changed. Plaintiffs contend that when Amtel received the star forged from a different alloy they had a duty to investigate the reason for the change. Such an investigation, the plaintiffs maintain, would have revealed that the reason for the change was Sikorsky had determined that the stars made of the old alloy were defective. Having discovered this, according to the plaintiffs Amtel would then had had a duty to contact the purchasers of Sikorsky helicopters and inform them of the risk. I believe that this extraordinary series of "duties" defies common sense. There is nothing in the record to show that Amtel in fact knew the reason for the substitution of a new alloy. The law does not impose a duty upon a manufacturer in Amtel's position to undertake an independent investigation as suggested.

On the strict liability count, I have already observed that the Third Circuit has said that § 402A has implicitly within it the notion that a manufacturer should not be held liable unless his product is responsible for the injury. *See Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir. 1978); *Taylor v. Abbe, Inc.*, 516 F.2d 145 (3d Cir. 1975). In this case it is not the product but the use to which Sikorsky put the product that is of moment. Just as in the safety device cases, where the Third Circuit has said that the district court may consider, *inter alia*, the expertise of the component part manufacturer vis-a-vis the assembler of the finished product, I believe a similar inquiry is in order when considering whether the component part manufacturer can be held liable for failure to warn the user. When that standard is applied here, it is clear that Amtel did not have the expertise required to know enough to give a warning.

Finally, no public policy can be served by imposing a civil penalty on a manufacturer of specialized parts for a highly technical machine according to the specifications supplied by one who is expert at assembling these technical machines, who does so without questioning the plans or warning of ultimate user. The effect of such a decision on component parts manufacturers would be enormous. They would be forced to retain private experts to review an assembler's plans and to evaluate the soundness of the proposed use of the manufacturer's parts. The added cost of such a procedure both financially and in terms of stifled innovation outweighs the public benefit of giving plaintiffs an additional pocket to look to for recovery. I believe the better view is to leave the liability for design defects where it belongs and where it now is—with the originator and implementer of the design—the assembler of the finished product.

### ORDER

NOW, October 28, 1980, upon consideration of the defendant Amtel, Inc.'s motion for summary judgment which I consider under Rule 78 without oral hearing, memoranda submitted by the parties and for the reasons stated in the accompanying memorandum, IT IS ORDERED that the motion is GRANTED.