**Joseph S. LESNEFSKY and Mary Lesnefsky**

v.

**FISCHER & PORTER CO., INC. et al.**

Civ. A. No. 78–3350.

United States District Court, E. D. Pennsylvania.

Dec. 8, 1981.

 

Bernard F. Pettit, Philadelphia, Pa., for plaintiffs.

Benjamin E. Zuckerman, Norristown, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action the plaintiff, Joseph S. Lesnefsky, claims that on January 3, 1977 he was burned by boiling hops during the course of his employment at the brewery of C. Schmidt & Sons, Inc. (the Brewery). The plaintiff alleges that Fischer & Porter Co., Inc. (Fischer & Porter) is liable for his injury on the basis of negligence, warranty and § 402A of the Restatement (Second) of Torts for the defective design and manufacture of the control panel which Mr. Lesnefsky was operating. Following extensive discovery by the parties, Fischer & Porter filed a motion for summary judgment. For the reasons hereinafter set forth, the Court will grant Fischer & Porter's motion for summary judgment.

In determining the propriety of granting a motion for summary judgment, the Court must consider whether there exists a genuine issue as to any material fact. *Hicks v. A.B.T. Assoc., Inc.,* 527 F.2d 960, 967 (3d Cir. 1978); *Abdallah v. Caribbean Security Agency,* 557 F.2d 61, 63 (3d Cir. 1977). On the basis of uncontroverted depositions and affidavits, the Court finds that there is no genuine issue of any material fact. The uncontroverted record may be summarized as follows.

On the day of the accident the plaintiff, an employee of the Brewery, was attending a large metal mash cooker, bringing the water inside the cooker up to a prescribed temperature and adding the "malt". Instruments on the control panel for the cooker showed that the temperature inside the cooker was rising above the pre-set automatic shut-off point. The plaintiff walked to the telephone to call his supervisor about the problem when boiling mash spilled out of an access port on the cooker burning him and causing his injury.

The mash cooker, built in 1970, is operated by a control panel manufactured by Fischer & Porter. Fischer & Porter manufactured the control panel pursuant to the specifications and blueprints provided by the Brewery. The Brewery has accepted full responsibility for design of the entire system including development of the control panel and the automatic operation system.

Plaintiffs allege § 402A liability claiming both that the control panel was defectively designed and that Fischer & Porter failed to warn plaintiff of the risks. The plaintiffs also claim that Fischer & Porter was negligent in designing the control panel because it was not designed or manufactured with a temperature override control or a secondary steam shut-off valve and because Fischer & Porter had a duty to warn the user of the inherent risk involved in operating the cooker without such safety devices.

Fischer & Porter contends that it is not liable for the defective design of the control panel on the grounds that it did not design the panel but merely manufactured it in strict accordance with the specifications provided to it by the Brewery, a knowledgeable and experienced purchaser and user.

This Court recognizes its responsibility to resolve in favor of the non-moving party any doubt concerning whether there is a genuine issue of material fact. Our examination of the depositions and affidavits submitted by the parties shows clearly that Fischer & Porter has met its burden of showing that no genuine issues of material fact exist. Fischer & Porter has submitted the affidavit of Joseph T. Delago, Assistant Secretary of Fischer & Porter. Mr. Delago

states that the control panel was manufactured for the Brewery in 1970 to specifications provided by the Brewery. The control panel complied with the Brewery's specifications and the Brewery accepted the panel. Fischer & Porter did not design, manufacture or install the steam valve or hatch cover, the parts which caused plaintiff's injuries. Fischer & Porter also submitted a copy of the report made by plaintiff's expert, Paul Karl Goldberg, P. E. After a careful inspection of the cooker, Mr. Goldberg gave his opinion that the cooker was *defectively designed* because it did not include a temperature limit control or a secondary steam shut-off valve. Mr. Goldberg reported no finding that the control panel for the cooker had been defectively manufactured.

■ The facts set forth in the affidavits, which affidavits remain uncontradicted, show that Fischer & Porter did not design the control panel nor was the panel manufactured defectively. Plaintiff merely contends that his own expert's report, showing no manufacturing defect, is not conclusive of the issue as to manufacturing defects but there is no affidavit or deposition which claims a manufacturing defect. A party opposing summary judgment on the grounds that there exists a genuine issue of material fact must respond to an affidavit with more than a general denial. Federal Rules Civil Procedure, Rule 56, *Tunnell v. Wiley*, 514 F.2d 971 (3d Cir. 1975); *Lockhart v. Hoenstine*, 411 F.2d 455, 459 (3d Cir. 1969). The Court may not assume the existence of a factual issue where none exists. *Lockhart* at 459. The plaintiff has had ample opportunity over the last two and one-half years to have Mr. Goldberg or any other expert examine the malt cooker to look for manufacturing defects. He has also had the opportunity to review all the reports concerning the accident. As heretofore stated, the plaintiffs have failed to respond to Fischer & Porter's affidavits with more than a general denial.

The plaintiffs do not respond to those portions of Fischer & Porter's affidavits which establish that it was not responsible for the design of the control panel. Therefore, we must accept as a fact for the purpose of Fischer & Porter's summary judgment motion that the control panel was designed by the Brewery and not by Fischer & Porter. In addition, the plaintiffs have not controverted the affidavit of Fischer & Porter that the control panel was not so obviously dangerous that Fischer & Porter had an obligation to warn the ultimate user of the risk or to refuse to manufacture the panel without making modifications. The uncontroverted affidavits show that Fischer & Porter lack the expertise required to recognize risks which might arise in the operation of the control panel in the Brewery.

Thus the Court is presented with the question as to whether a manufacturer who produces a component sub-assembly in accordance with the specifications of a buyer who has superior knowledge and experience in the field is liable for injury to a user caused by the defective design of the product.

■ Federal courts sitting in diversity cases must ascertain and apply state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). When an issue is presented and applicable state precedent is absent, Federal courts must predict the law of the state. *Gerr v. Emrick*, 283 F.2d 293, 294 (3d Cir. 1960), *cert. den. sub nom., Pennsylvania Turnpike Comm. v. Gerr*, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961).

■ The Pennsylvania Supreme Court adopted § 402A of the Restatement (Second) of Torts in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). The Court has since modified application of § 402A by removing the term "unreasonably dangerous" and other negligence terms from § 402A jury instructions because it considers such an instruction misleading to a jury deciding issues of strict liability. *Azzarello v. Black Bros.*, 480 Pa. 547, 391 A.2d 1020 (1978). The deletion of "unreasonably dangerous" from the jury instructions did not, however, abolish the concept inherent in § 402A that a manufacturer is not an insurer of his product. As the Supreme Court stated in *Azzarello*:

While this expansion of the supplier's responsibility for injuries resulting from de-

fects in his product has placed the supplier in the role of a guarantor of his product's safety, it was not intended to make him an insurer of all injuries caused by the product. 391 A.2d at 1024.

*See also Sherk v. Daisy-Heddon*, 285 Pa.Super. 320, 427 A.2d 657, 661 (1981).

■ Although the Pennsylvania Supreme Court has not squarely decided this issue our analysis of § 402A and the cases wherein this issue has been presented leads us to the conclusion that the Pennsylvania Supreme Court will hold that a manufacturer who produces a component part in accordance with the specifications of a buyer is not liable under § 402A for the part's defective design unless the manufacturer has or should have knowledge that the product is unsafe for the use intended.

My colleague, Judge Huyett, in a case presenting this very issue, found that the Pennsylvania Supreme Court would hold that the manufacturer of a part made pursuant to the buyer's specifications is not liable under § 402A for the defective design of the part. He further determined that the State Supreme Court would hold that a manufacturer in such a situation had no duty to warn the ultimate user of the risks caused by the design defect because the manufacturer's relative lack of expertise in the field meant that he was unable to foresee the risk. *Orion Insurance Co., Ltd. v. United Technologies Corp. et al.*, 502 F.Supp. 173, 178 (E.D.Pa.1980). Judge Huyett pointed out, however, that the manufacturer would be liable if the plans and specifications provided by the purchaser were obviously dangerous. *Id.* at 176; *see also Spangler v. Kranco, Inc.*, 481 F.2d 373 (4th Cir. 1973).

We determine, therefore, that no public policy is served by requiring the component manufacturer to hire experts, at great cost, to review specifications provided by an experienced purchaser in order to determine whether the product design will be safe for its intended use. *Orion, supra* at 177.

Furthermore, our Third Circuit in *Taylor v. Abbe, Inc.*, 516 F.2d 145 (3d Cir. 1975), while applying Pennsylvania law stated:

"We believe that the requirement that liability only be imposed when the manufacturer is responsible for the defective condition is necessarily implicit in § 402A, and the absence of case law is probably a result of the fact that in most cases the manufacturer's responsibility is either self-evident or is arguably negated by such traditional doctrines as superseding cause or change in conditions." *Id.* at 147. In holding that a manufacturer was not liable for the absence of a safety device, the Third Circuit pointed out that the manufacturer had shipped replacement parts to the purchaser but did not install the parts and did not make any design changes although he had offered to provide a safety guard for the exposed gear, which the purchaser rejected. The Court's holding was based on the fact that the manufacturer was merely a supplier dealing with a purchaser who had over fifty years experience operating the machinery for which the parts were supplied.

In the present case Fischer & Porter manufactured a component which had been designed by the purchaser who had many years of experience in operating brewery machinery. Although the parts were not replacement parts, they were however designed by the purchaser who had superior knowledge in the operation of such equipment and who retained complete control over the design of the equipment and its installation.

■ Since the decision in *Taylor*, the Third Circuit has laid down a three-factor test to establish responsibility for the absence of safety devices in machinery created as the result of substantial work by more than one party. *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir. 1978). The factors to be examined are: (1) Trade Custom—at what stage the safety device is generally installed; (2) *Relative Expertise* (emphasis supplied)—which party is best acquainted with the design problems and safety techniques in question; and (3) Practicality—at what stage is installation of the device more feasible. *Id.* at 387. Application of these tests in *Verge* resulted in judgment n. o. v. for the defendant who had supplied a truck cab and chassis which was later adapted for use as a garbage truck. The truck lacked a

warning buzzer for backing up and while moving backwards struck the plaintiff. Installation of a buzzer was held not to be the defendant's responsibility because they had no reason to know how their cab-chassis would be outfitted or used and hence no idea exactly what specialized safety equipment would be required.

Application of the *Verge* test to the present facts generates a result consistent with this Court's prediction as to the law of Pennsylvania. There is no evidence of custom of the trade because the control panel was a special order item. On the issue of expertise it is clear that the Brewery had far more experience with malt cookers than did Fischer & Porter. The issue of practicality of installation might be determined against Fischer & Porter except that the control panel, unlike the cab-chassis in *Verge*, was manufactured expressly to customer specifications and therefore the issue of practicality of installation is not applicable.

The Fourth Circuit in applying § 402A has also held that a manufacturer is not liable for design defects when producing a product to the purchaser's specifications. *Spangler v. Kranco, Inc.*, 481 F.2d 373 (4th Cir. 1973). They ruled that the manufacturer of a crane produced to the buyer's specifications was not liable for an injury which might have been prevented if the crane had been equipped with an alarm which sounded when backing up. The Court concluded that so long as the specifications provided were not obviously dangerous, the defendant would not be liable for the defective design of the product. *Id.* at 375.

■ On the basis of the analysis of § 402A, as herein set forth, the Court determines that the Pennsylvania Supreme Court would hold, on the uncontroverted facts set forth in the record, that Fischer & Porter is not liable for an injury caused by a design defect in the control panel which it manufactured pursuant to the design of the Brewery.

■ The uncontroverted facts also fail to support plaintiff's claim of negligence. "Negligence is the want of due care which a reasonable man would exercise under the circumstances." *Gift v. Palmer*, 392 Pa. 628, 141 A.2d 408 (1958). It is established that a negligence claim must fail if based on circumstances for which the law imposes no duty of care on the defendant. *Bradshaw v. Rawling*, 612 F.2d 135, 138 (3d Cir. 1979). The uncontroverted facts presently before the Court in this summary judgment motion present no basis in law supporting plaintiff's allegation that Fischer & Porter was negligent in manufacturing the control panel. To the contrary, plaintiff's own expert found that the injury was caused solely as the result of defective design. The uncontroverted facts reveal Fischer & Porter did not design the control panel. On the assumption that the panel was defectively designed, the uncontroverted facts reveal no basis for a finding that Fischer & Porter knew or should have known of the defect. The law does not impose a duty on the manufacturer of parts produced in compliance with specifications provided by an experienced purchaser-user to undertake an independent safety investigation concerning their intended use. It was not unreasonable as a matter of law for Fischer & Porter to rely on the specifications provided by the experienced Brewery. *See Orion, supra*, at 177; *Spangler, supra*, at 375.

Although neither of the parties has briefed the issue, the complaint also alleges that Fischer & Porter is liable for breach of express and implied warranties in connection with its manufacture and sale of the control panel. Pennsylvania has adopted the Uniform Commercial Code which covers the law of warranties in sales. 13 Pa.C.S.A. §§ 2313–2317 (formerly Pa.Stat.Ann. (Purdon's) tit. 12A §§ 2–313—2–317).

■ In the absence of any specific allegation of breach of an express warranty, it is assumed that the plaintiff is claiming breach of an implied warranty of fitness for a particular purpose. *See* 13 Pa.C.S.A. § 2315 (formerly Pa.Stat.Ann. (Purdon's) tit. 12A § 2–315). Such a warranty requires that the buyer rely on the seller's skill or judgment in selecting suitable goods for a particular purpose. The uncontroverted facts fail to reveal any basis for such a cause of action. On the contrary, the

uncontroverted facts show that the buyer was not only an experienced buyer but also that it had designed the control panel. Under such a situation, there could be no reliance on Fischer & Porter's expertise. The Pennsylvania courts have held that where a seller provides goods strictly in accordance with the specifications of the buyer, there can be no implied warranty of fitness. *Pioneer Paper Box Mfg. Co. v. Louis DeJonge*, 179 Pa.Super. 155, 115 A.2d 837 (1955).

█ The uncontroverted record also fails to support any possible claim of implied warranty of merchantability. 13 Pa. C.S.A. § 2314 (formerly Pa.Stat.Ann. (Purdon's) tit. 12A § 2–314). The uncontroverted facts do not provide any factual basis supporting an allegation that the panel was defectively manufactured or in any way substandard in its construction or performance. It performed exactly as the purchaser intended it to.

For the reasons stated herein, the Court will enter an Order granting summary judgment for Fischer & Porter and against the plaintiffs, Joseph S. Lesnefsky and Mary Lesnefsky.