967 F.2d 586
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tom FRENCH, Plaintiff-Appellant,
v.
KOCKUMS CANCAR CORP., et al. Defendant-Appellee.
 No. 91-15881.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1992.*
Decided June 12, 1992.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tom French ("French") appeals from the order granting summary judgment in favor of Kockums Cancar Corporation ("Kockums"). The district court rejected French's claim that Kockums should be held strictly liable for the injury he sustained while attempting to service a resaw manufactured in part by Kockums. French contends that the district court improperly concluded that Kockums could not be held strictly liable for his injury as a matter of California law for the following reasons:
 
 
 3
 One. Kockums cannot escape liability as a component part manufacturer because this result would frustrate the purpose of strict liability.
 
 
 4
 Two. Kockums' bandmill was defectively designed because it failed to contain adequate safety guards when it was sold to French's employer, Sierra Pacific Industries ("Sierra Pacific").
 
 
 5
 Three. Kockums could not reasonably rely on Sierra Pacific to install adequate safety guards.
 
 I.
 
 6
 We review a grant of summary judgment de novo. California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987).
 
 
 7
 The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 8
 The moving party bears the initial responsibility of informing the district court of the basis for its motion and indicating those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has satisfied this initial burden, the non-moving party must demonstrate that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The non-moving party may not merely rest on its pleadings, but must instead produce some significant probative evidence tending to support the complaint. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968).
 
 
 9
 As a federal court sitting in diversity, we must apply California substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). We review the district court's interpretation of applicable California law de novo. In re McLinn, 739 F.2d 1395, 1400 (9th Cir.1984) (en banc).
 
 II.
 
 10
 French contends that the district court erred by holding that Kockums could not be held strictly liable for his injuries, because the bandmill was a non-defective component of the operational resaw. French argues that strict liability in this case should be determined by viewing the resaw as a single, indivisible product and that Kockums should not escape liability as a mere component part supplier. According to French, "permitting Kockums to claim it merely provided components allows it to shift responsibility for such injuries to plaintiff's employer, thus frustrating the policy of strict liability in California." Appellant's Brief at 7. We reject French's argument that the bandmill was not separable from the operational resaw for purposes of strict liability, because we conclude that (1) California products liability law distinguishes between a component manufacturer and the manufacturer of a completed product, and (2) the undisputed facts demonstrate that the bandmill supplied by Kockums was a component part.
 
 
 11
 Under California law, "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." Greenman v. Yuba Power Prods., Inc., 59 Cal.2d 57, 62 (1963). This principle of strict liability in tort extends to "[a] component part manufacturer [who places into the market] ... a component part which was defective at the time it left the component part manufacturer's factory." Wiler v. Firestone Tire & Rubber Co., 95 Cal.App.3d 621, 629 (1979).
 
 
 12
 Despite the California courts' desire to "insure that the costs of injuries resulting from defective products are borne by the manufacturers ... rather than by the injured persons," Greenman, 52 Cal.2d at 63, the application of strict liability against manufacturers is subject to certain limitations. In this respect, there has been no case before the California courts "in which a component manufacturer who had no role in designing the finished product and who supplied a non-defective component part was held liable for the defective design of the finished product." Lee v. Electric Motor Div., 169 Cal.App.3d 375, 385 (1985).
 
 
 13
 The evidence contained in the record demonstrates that the bandmill supplied by Kockums was a component of the completed resaw assembled by Sierra Pacific. In support of its motion for summary judgment, Kockums presented the declaration of John Reed, a mechanical engineering supervisor employed by Kockums. Reed stated that the bandmill sold to Sierra Pacific consisted solely of a "top and bottom machine frame each with two wheels and sheaves (the component to which drive belts are affixed)." Reed further stated that the bandmill was "totally inoperable" and required a substantial amount of additional equipment before it could function as a resaw, such as a concrete base with mounting bolts, electric motors, a hydraulic sump and pump, hydraulic plumbing, wiring, a computerized control system, a remote operator's cubicle, cutting saw bands, safety guards, and conveyor belts.
 
 
 14
 French did not introduce any evidence in support of his assertion that the bandmill was not a component part. Based on this "complete failure of proof concerning an essential element of the nonmoving party's case," Celotex Corp., 477 U.S. at 323, we conclude that the district court did not err in treating the bandmill as a component part for purposes of summary judgment under California products liability law.
 
 III.
 
 15
 French next contends that, even if the bandmill was a component part for purposes of California products liability law, the bandmill was defective because it did not contain safety guards when it was sold to Sierra Pacific. In a closely related argument, French further asserts that it was not reasonable for Kockums to rely on Sierra Pacific to install adequate safety guards on the assembled resaw. We disagree.
 
 
 16
 The evidence in this case demonstrates that Kockums could not have included safety guards with its bandmill when it was sold to Sierra Pacific. The declaration of John Reed indicates that the safety guards could be designed and manufactured only after Sierra Pacific purchased the cutting blades from another supplier and determined their desired placement and function. Because it was impossible for Kockums to manufacture the bandmill with safety guards, Kockums' alleged liability for French's injury must rest on the fact that it did not require Sierra Pacific to purchase its services in designing and installing the safety guards, but instead offered this service as an option at extra cost.
 
 
 17
 Thus far, no California court has addressed the precise issue whether a component manufacturer must refuse to sell its product if the purchaser does not to agree to buy additional safety equipment once the component has been integrated into a completed product. In similar cases, however, the California courts have held that a component part manufacturer is not strictly liable for design defects in a final product, especially where the component part manufacturer did not participate in the design or assembly of the final product. See Lee, 169 Cal.App.3d at 386-87 (manufacturer of an electric motor was not strictly liable for injuries to plaintiff caused by a meat grinder because "[t]he evidence establishe[d] that defendant had no role in the design of the [meat grinder], and that defendant reasonably relied on [the manufacturer of the meat grinder] to insure proper design and installation of the motor"); Fierro v. International Harvester Co., 127 Cal.App.3d 862, 869 (1982) (manufacturer of fuel tank "could reasonably expect that [truck manufacturer] would take appropriate measures to insure proper design to cover and protect the fuel tanks"); Wiler, 95 Cal.App.3d at 629 (defendant Firestone was not liable for injuries caused to plaintiff when plaintiff's tire deflated and his car left the road, because the deflation was attributable to a defective valve stem manufactured and attached to the tire by the Ford Motor Company); Walker v. Stauffer Chemical Corp., 19 Cal.App.3d 669, 674 (1971) (affirming a grant of summary judgment in favor of a manufacturer of non-defective sulfuric acid and stating that it is not "realistically feasible or necessary to the protection of the public to require the manufacturer and supplier of a standard chemical ingredient such as bulk sulfuric acid, not having control over the subsequent compounding, packaging or marketing of an item eventually causing injury to the ultimate consumer, to bear the responsibility for that injury").
 
 
 18
 We are further persuaded by the court's reasoning in Taylor v. Paul O. Abbe, Inc., 516 F.2d 145 (3d Cir.1975), that the district court did not err by granting summary judgment in favor of Kockums. In Taylor, a seventeen-year old boy, was injured when his hand got caught in the nip point of two interlocking revolving gears in his employer's pebble mill. Id. at 146. Prior to his injury, the owner of the mill, Superior Zinc Co. (Superior) contracted Paul O. Abbe, Inc. (Abbe) to replace worn parts of the mill's machinery. Id. Although Abbe was not the original manufacturer of the mill, it was able to provide Superior with four replacement parts, including a grinding cylinder, a ring gear to surround the cylinder, a new pinion gear to mesh with the ring gear, and a jack shaft to connect the pinion to the motor. Id. Abbe merely shipped these parts to Superior and did not participate in their assembly. Id. As part of its sale of these parts, Abbe also offered to provide Superior with a safety guard at an additional cost of $110.00. Id. Superior declined to purchase the safety device. Id.
 
 
 19
 Taylor sued Abbe in federal district court, arguing that the mill was defectively designed in part because it did not contain a safety cover for the interlocking gears. Id. at 147. The district court entered judgment on a jury verdict in favor of Taylor. Id. On appeal, the Third Circuit reversed the judgment and entered a judgment notwithstanding the verdict in favor of Abbe. Id. Although the court recognized that it was bound to follow the law of the forum state, Pennsylvania, and that "Pennsylvania ha[d] adopted the principle of strict liability set forth in Restatement § 402A", id., the court concluded "that as a matter of law Abbe was not responsible for the absence of a guard." Id. at 148. In explaining its decision, the court stated that the crucial factor was "the undisputed testimony that Abbe offered to sell such a guard to Superior but that Superior refused it." Id. As the court stated:
 
 
 20
 Under these circumstances, we think it clear that the responsibility for the absence of the guard should be placed on Superior rather than Abbe, since Superior was the party which made the decision as to the composition of the fully assembled mill. We believe that in a case like this a supplier should be required only to make a bona fide offer of a safety device.
 
 
 21
 Id. The court further noted that "the public policy considerations against absolving the offeror of a safety device from liability are less compelling" where, as in this case, there was no statutory obligation placed on the component parts manufacturer to furnish safety guards, the purchaser was an "established business entity" with substantial experience in the operation of dangerous machinery, or where the manufacturer "merely supplied components which were later assembled by the purchaser without any supervision [by the manufacturer]." Id.
 
 
 22
 Because we conclude that Kockums supplied Sierra Pacific with a non-defective component part, and that Kockums was not legally liable for the inadequate safety guard installed on the resaw, we hold that the district court's grant of summary judgment in favor of Kockums was proper. Given Kockums' role as a supplier of only a component part, its reliance on Sierra Pacific, a sophisticated purchaser, to take appropriate safety measures was reasonable.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3